COURT OF APPEALS OF VIRGINIA


Present:  Judges Humphreys, Felton and McClanahan
Argued by teleconference


JUDITH ANNE IRWIN

OPINION BY
v.        Record No. 0496-05-3        JUDGE ELIZABETH A. McCLANAHAN
DECEMBER 28, 2005
CARL FRANCIS IRWIN, JR.


FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
Thomas H. Wood, Judge

Frankie C. Coyner (Law Offices of Frankie C. Coyner, on brief),
for appellant.

Linda Schorsch Jones (Poindexter & Schorsch, on brief), for
appellee.


Judith Anne Irwin appeals a trial court decision regarding the division of Carl Francis

Irwin's monthly pension.  The court held that husband was not liable to wife for one-half of the

pension payments from April 2004, the date of the final decree, to October 2004, when wife

began receiving one-half of the pension payments under a qualified domestic relations order

(QDRO).  Husband contends that the court erred in denying him attorney's fees in connection

with the dispute.  For the reasons that follow, we affirm in part, reverse in part, and remand to

the trial court.

I.  BACKGROUND

The parties were married on June 26, 1965, and separated on October 23, 2002.  Wife

filed a bill of complaint for divorce in the Circuit Court for Augusta County.  The matter was

referred to a commissioner in chancery.  At the beginning of the commissioner's hearing on

January 19, 2004, the parties represented to the commissioner that they had reached an

agreement on attorney's fees, spousal support, and division of their marital property. The commissioner stated on the record, "The parties and counsel are now representing that an agreement has been reached before any evidence was taken, and we're going to read this agreement into the record in the event there is later any dispute about it."[1] Wife's counsel read the agreement into the record. With regard to husband's pension, wife's counsel stated, "The parties have the pension account, which pays out at $4,451 per month. That will be split equally between the parties." Although the parties recited the value of the account as of the date of the commissioner's hearing, the agreement was silent as to the date wife would begin receiving payments on her one-half of the pension benefits.[2] Later in the hearing, husband's counsel stated, "And I assume you'll be preparing the qualified domestic relations order for the division of the pension?" Wife's counsel agreed, and said, "That's the only asset the QUADRO [sic] would be necessary for."

The court entered a final decree on April 13, 2004, which incorporated the parties' agreement. With regard to the pension, the final decree provided, "Respondent shall pay Complainant one-half of his monthly pension account which, as of 19 January 2004, was distributing $4,451.00 per month. Complainant shall receive her one-half of this monthly pension amount through a Qualified Domestic Relations Order, to be drafted by her counsel and submitted to the Court accordingly." With respect to attorney's fees, the final decree stated that each party "shall pay her or his attorney's fees in full, without contribution from the other." The final decree also stated, "This cause is continued for entry of a Qualified Domestic Relations Order, which the Court directs to be prepared by counsel for Complainant."

---

[1] The parties agreed to have the commissioner's hearing transcribed.

[2] None of the asset allocation provisions in the parties' agreement was time-specific as to execution, performance, or payment. The agreement did, however, provide the value of the assets as of the date of the commissioner's hearing.

Wife's counsel submitted a draft QDRO to the pension plan administrator on July 1, 2004. The draft provided that wife was to be paid, "$2,225.50 per month beginning April 2004 and continuing each and every month thereafter." In a response letter to wife's counsel, and copied to the parties, the plan administrator stated that benefits could not be distributed to a date retroactive to the date the QDRO is entered. The payments to wife could only be made "as soon as practicable."

A revised QDRO was submitted to and approved by the plan administrator and entered by the court on September 17, 2004. Wife filed a motion on September 27, 2004, stating that she asked husband to pay her directly one-half of the monthly pension payments pending implementation of the QDRO, which husband refused to do. Accordingly, she asked the court to order husband to pay her the accrued amount of one-half of the pension payments from the date of entry of the final decree. The court took no action on the motion. Husband continued to pay wife spousal support in the amount of $561 per month, as provided for in the court's *pendente lite* order, until she began receiving one-half of the pension payments in October 2004. Wife renewed her motion on December 30, 2004. Husband filed a motion to dismiss on January 7, 2005, arguing that the court lacked jurisdiction under Rule 1:1, because the court took no action on the September motion, and because the renewed motion was filed more than 21 days after the QDRO was entered. Husband also requested attorney's fees associated with the motion to dismiss.

On February 2, 2005, the court heard the matter on whether husband was liable to wife for one-half of the pension from April, the date of the final decree, to October, when wife began receiving payments under the QDRO. The court agreed with husband that it has no "power to adjudicate anything," but said it had the power to declare what the decree said on the matter. It denied husband's request for attorney's fees.

On the pension issue, the court issued a letter opinion, in which it stated that a time interval between the entry of the decree and the QDRO is inherent in the process and that "the length of this interval depends primarily upon the attitude and efficiency of the plan administrator." Finding that wife's property interest vested and payments were due as of the final decree, it continued,

> there are two equitable ways to cover this interval in those cases where the owner of the pension plan is actually receiving his or her benefits; the *pendente lite* spousal support can continue until the benefits are received, or the owner of the plan can pay from his or her own funds until the other spouse begins receiving benefits.

The court concluded that husband was not liable to wife for the difference between the *pendente lite* spousal support he actually paid and an amount equal to one-half of the pension amount for the months of May, June, July, August and September. Wife appeals this decision. Husband also appeals the court's decision not to award him attorney's fees.

## II. ANALYSIS

### A. Pension Benefits

Code § 20-155 provides that, "[m]arried persons may enter into agreements with each other for the purpose of settling the rights and obligations of either or both of them" and "such marital agreements shall become effective immediately upon their execution." [3] "In Virginia[,] property settlement agreements are contracts and subject to the same rules . . . of interpretation as other contracts." Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986) (citation omitted). Thus,

_____

[3] That statute also provides that if the terms of the agreements are recorded and transcribed by a court reporter and affirmed by the parties on the record personally, the agreement is considered "executed." In this case, the agreement was recorded and transcribed, and the court stated on the record that the parties represented to the court that they had reached that agreement. The parties also testified at the February 2, 2005 hearing that they had agreed to the provisions of the agreement at the commissioner's January 19, 2004 hearing.

> "[i]t is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."

Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984) (quoting Meade v. Wallen, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984)). In this case, the parties' property settlement agreement (PSA) clearly provided that the pension, which pays $4,451 per month, would be split equally between the parties.[4]

In Himes v. Himes, 12 Va. App. 966, 407 S.E.2d 694 (1991), the Supreme Court stated, "property rights and interests [become] vested in the parties when they [agree] upon them, set them forth in a valid separation agreement, and [have] them incorporated into their final divorce decree." Id. at 970, 407 S.E.2d at 697 (citing Shoosmith v. Scott, 217 Va. 290, 292, 227 S.E.2d 729, 731 (1976), aff'd on rehearing, 217 Va. 789, 793, 232 S.E.2d 787, 789 (1977)). In Shoosmith, the parties entered into a PSA that provided husband pay wife alimony. The court affirmed the PSA in the final decree. Several years later, husband stopped making the alimony payments to wife because he believed that the General Assembly's amendments to the Code providing termination of alimony payments upon a recipient's remarriage relieved him of

---

[4] In this case, the court incorporated the agreement into the final decree. Code § 20-109.1 authorizes the trial court to "affirm, ratify and incorporate by reference in its decree dissolving a marriage or decree of divorce . . . any valid agreement between the parties . . . concerning the conditions of the maintenance of the parties, or either of them . . . or establishing or imposing any other condition or consideration, monetary or nonmonetary." When a court exercises the authority given to it under Code § 20-109.1, or thereafter enforces the resulting decree, "no decree or order directing the payment of support and maintenance for the spouse . . . or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract." Code § 20-109(C). A property settlement agreement that is incorporated into a final decree is enforceable either under contract law or through the court's contempt power. Hering v. Hering, 33 Va. App. 368, 373-74, 533 S.E.2d 631, 634 (2000) (citing Doherty v. Doherty, 9 Va. App. 97, 99, 383 S.E.2d 759, 760 (1989)).

making further payments. Wife brought an action to recover accrued alimony due to her. The

Supreme Court held that wife's right

> arises from a property settlement agreement approved and
> confirmed by the chancellor in the final divorce decree. Such an
> agreement creates vested property rights in the parties by virtue of
> the judicial sanction and determination of the court; it is a final
> adjudication of the property rights of the parties; and it cannot be
> abrogated by subsequent legislative action.

Shoosmith, 217 Va. at 292, 227 S.E.2d at 731 (citation omitted). If a property right vested by a

PSA and incorporated into a final decree cannot be abrogated by legislation, it is surely not

abrogated by one party's delay in obtaining approval of the QDRO by a plan administrator.

The question is then, when was wife entitled to receive payments on her agreed one-half

of the monthly pension benefits? Husband was already receiving the monthly pension from the

plan administrator when the divorce decree was entered. The court found that wife's property

interest vested and that payments were due to wife as of the final decree date.[5] However, the

court then concluded that,

---

[5] Because wife waived any claim in one-half of the pension payment prior to the date of the final decree, we do not find that the court abused its discretion in that finding, even if: (i) wife's property interest had, in fact, vested upon execution of the PSA, see Kennedy Coal Corp. v. Buckhorn Coal Corp., 140 Va. 37, 45, 124 S.E. 482, 484 (1924); see also Carmichael v. Snyder, 209 Va. 451, 164 S.E.2d 703 (1968) (holding that purchaser became vested in an interest in property upon execution of an executory contract); and (ii) (a) the first payment was due immediately thereafter because there was no payment date specified, see Young v. Ellis, 91 Va. 297, 301, 21 S.E. 480, 482 (1895) ("An agreement to pay money, no time being specified, is held to be an agreement to pay the same on demand . . . while an agreement to do something other than to pay money, no time being expressed, means a promise to do it in a reasonable time."); see also McDaniel v. Daves, 139 Va. 178, 188-89, 123 S.E. 663, 666 (1924) ("[W]here no time is expressly limited for the payment of the money mentioned in a special contract in writing, the legal construction is, that it is payable presently."); or, (b) if on the other hand, the obligation to pay was only to be performed within a reasonable time after execution of the PSA, see Grossmann v. Saunders, 237 Va. 113, 120-21, 376 S.E.2d 66, 70 (1989) ("[W]hen a contract is silent as to the time within which an act is to be performed, the law implies a reasonable time, and what constitutes a reasonable time is generally an issue to be decided by a [fact finder]." (citations omitted)); see also Ebert v. Ebert, 465 S.E.2d 121, 126 (S.C. App. 1995) (citing 17A Am. Jur. 2d Contracts § 479 (1991)) ("A court approved divorce settlement must be viewed in accordance with principles of equity and there is implied in every such agreement a requirement

> there are two equitable ways to cover this interval in those cases where the owner of the pension plan is actually receiving his or her benefits; the *pendente lite* spousal support can continue until the benefits are received, or the owner of the plan can pay from his or her own funds until the other spouse begins receiving benefits.

The court, therefore, refused to order husband to pay wife directly her one-half of the pension benefits citing husband's voluntary continued payments of *pendente lite* spousal support [6] after the final decree was entered as a substitute for the pension payments. Continuation of spousal support payments under a *pendente lite* order is, however, not an appropriate remedy. [7] Pursuant to Code § 20-79, *pendente lite* orders become inoperative upon the entry of the final decree in which provision is made for support. Furthermore, the *pendente lite* payments were $1,664.50 per month less than the pension payments due. So, while the court found that wife was due one-half of the pension payments from the final decree date, it provided her with an erroneous and financially inadequate remedy.

Ordinarily, pursuant to Rule 1:1, courts lose jurisdiction twenty-one days after entry of a decree, but when maintaining a qualified domestic relations order, courts may "[m]odify *any* order . . . intended to . . . divide *any* pension [plan] . . . to revise or conform its terms so as to effectuate the expressed intent of the [original] order." Code § 20-107.3(K)(4) (emphasis added). "Such modification, however, must be 'consistent with the substantive provisions of the original decree' and not 'simply to adjust its terms in light of the parties' changed

---

of reasonableness. Where there is no time set for performance of the terms of a contract, a reasonable time is implied."); Gray v. Marion County Lumber Co., 86 S.E. 640, 641 (S.C. 1915) (holding that when a contract is silent "[i]n all cases [what is a reasonable time] must be determined upon the facts and circumstances of each case which were known to both parties at the time of making the contract").

[6] Husband testified that it was his "understanding that [he] needed to [continue to pay the spousal support] until the pension was – she was receiving her share of the pension."

[7] In this case, the parties also waived spousal support and the final decree provided only for the reservation of spousal support.

circumstances.'" Williams v. Williams, 32 Va. App. 72, 75, 526 S.E.2d 301, 303 (2000) (quoting Caudle v. Caudle, 18 Va. App. 795, 798, 447 S.E.2d 247, 249 (1994)); see also Newsome v. Newsome, 18 Va. App. 22, 26, 441 S.E.2d 346, 348 (1994).[8] In Williams, as in this case, the manifest intent of the original order was to allot the wife one-half of the monthly pension payment as of the date of the final decree. There was no changed circumstance. Accordingly, this Court affirmed the circuit court's order directing husband to directly pay wife her portion of the pension benefits not covered by the QDRO, reasoning that the QDRO did not accomplish the intent of the original decree. See Williams, 32 Va. App. at 76, 526 S.E.2d at 303.

The court's refusal to require husband to pay wife directly her one-half share of the monthly pension payment while the QDRO was pending was an abuse of discretion upon a finding that she was due payment from the final decree date. The provision for wife to receive her one-half of the monthly pension through the QDRO was merely ministerial, a procedural step to effect the division of the asset by the plan administrator, and not a substantive term of the agreement. See Turner v. Turner, ___ Va. App. ___, ___, ___ S.E.2d ___, ___ (2005) ("QDRO simply was an administrative mechanism to effectuate the intent and purpose of final decree's award."). Delays in the approval and entering of the QDRO cannot operate to deny wife her property right in the pension. Pursuant to its authority under Code § 20-107.3(K)(4), the court

---

[8] The purpose of the legislative enactment of Code § 20-107.3(K)(4) was "to protect the interests of pension recipients from the unintended consequences of improperly or incomplete drafted pension orders. . . ." Report of the Family Law Section of the Virginia State Bar on Equitable Distribution of Property in Divorce Proceedings, House Document No. 19, at 15-16 (1991). The statutory reservation permits "the court to revise its orders to comply with language required by federal law to effectuate the intended pension award, but not to substantively change the pension award itself." Id. The House document recognized that "the integrity and enforceability of such pension division orders, and the receipt by the spouse of such award in the future, relies on the present proper drafting of such orders in order to comply with applicable federal law." Id. Reservation of jurisdiction is necessary for "the future performance of such orders, and the receipt by spouse of [his or her] expected pension awards . . . ." Id.

should have granted wife's motion. Cf. Rowe v. Rowe, 24 Va. App. 123, 142, 480 S.E.2d 760, 769 (1997).

The court sanctioned the agreement the parties made at the commissioner's hearing by incorporating it into the final decree. Code § 20-155 makes such agreements "effective immediately," and the Supreme Court has held that the property rights arising from a PSA and confirmed by a chancellor in the final divorce decree are vested in the parties. Himes, 12 Va. App. at 970, 407 S.E.2d at 697; see also Shoosmith, 217 Va. at 292, 227 S.E.2d at 731. The court also found that payments were due from husband from the time of the final decree. Thus, wife's property right in her one-half of the monthly pension payments was vested and the payments were payable at the time of the final decree.[9] As noted above, wife specifically waived her property right to one-half of the pension prior to the date of the final decree, April 13, 2004. She has also agreed to credit husband for the amount of spousal support he paid after entry of the final decree.[10] We remand for entry of a decree consistent with this opinion.

## B. Attorney's Fees

Husband claims that the court erred in declining to award him attorney's fees in association with the motions filed on the pension issue. Whether to award attorney's fees "'is a matter submitted to the sound discretion of the trial court and reviewable on appeal only for an

---

[9] Wife is seeking one-half of the monthly pension payments from April 2004, the date of the final decree, to October 2004, when wife began receiving one-half of the pension under the QDRO. Because wife has waived receipt of her half of the monthly pension payments from the execution date of the PSA, January 19, 2004, to the entry of the final decree, we do not address whether wife's property interest vested at the time of the PSA, but only whether it was vested at the time of the final decree, which it clearly was.

[10] In her motion to the circuit court and in her brief on appeal to this Court, wife has asked only for one-half of the monthly pension payments from the date of the entry of the final decree. In her testimony before the circuit court and in oral argument on appeal she agreed that husband is entitled to a credit for the spousal support he paid after entry of the final decree. Courts can only grant relief requested. See Wilson v. Wilson, 25 Va. App. 752, 761, 492 S.E.2d 495, 499 (1997).

abuse of discretion.'" Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003) (quoting Northcutt v. Northcutt, 39 Va. App. 192, 199-200, 571 S.E.2d 912, 916 (2002)); see also Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987).

This decision was well within the circuit court's discretion. In considering the issue, the court stated that the dispute was "bona fide," that it found neither party's position to be unreasonable, and that each party was in a financial position to afford a lawyer to protect his or her rights. Under the circumstances of this case, we hold that the circuit court did not abuse its discretion in denying husband attorney's fees.

### III. CONCLUSION

For the foregoing reasons, we reverse with regard to the pension issue and remand to the circuit court to enter an order enforcing wife's property right in one-half of the pension payments from the date of the final decree, April 13, 2004, with a provision for wife's concession to credit husband for the amount of spousal support he paid after entry of the final decree. We affirm the circuit court with regard to its denial of attorney's fees to husband.

Affirmed, in part, reversed, in part, and remanded.