COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Senior Judge Annunziata
Argued at Richmond, Virginia


KENT CUSACK
                                                              OPINION BY
v.        Record No. 0325-08-4                      JUDGE LARRY G. ELDER
                                                             JANUARY 20, 2009
DEBORAH CUSACK


                  FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                                  Gordon F. Willis, Judge

            Ronald Robinson (Robinson Law Office, PLLC, on briefs), for
            appellant.

            (A. Lewis Lowery, Jr.; Rinehart, Lowery, Strentz & Butler, P.L.C.,
            on brief), for appellee.  Appellee submitting on brief.


        Kent Cusack (husband) appeals from an equitable distribution award directing payment

to Deborah Cusack (wife) of a portion of his military retirement benefits.  On appeal, husband

contends the court erred in directing that wife receive a portion of the marital share of those

retirement benefits commencing on the date of husband's retirement, which occurred after the

parties separated but almost a year before wife filed her bill of complaint for divorce and over

two years prior to the equitable distribution evidentiary hearing.  Husband contends the trial

court also erred in directing that, to the extent the designated agent was prohibited by law or

regulation from paying wife the entire amount required by the court's order, husband was

personally responsible for paying wife any shortfall.  We reverse that portion of the final decree

ordering that payments of wife's share of husband's military pension were to commence on

May 31, 2005, but hold the trial court had authority to order husband responsible for any

payments due but not payable directly from the pension. We deny wife's request for attorney's fees and costs on appeal, and we remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Husband entered the United States Army in 1979 and married wife in 1992. Wife had two children from a previous marriage, who resided with the couple throughout their marriage, and the parties had two children together, both of whom had serious medical conditions and required multiple surgeries. The couple separated on August 7, 2004, when husband was arrested for numerous counts of child pornography and unlawful videotaping of a minor stemming from an incident involving one of his stepchildren. Husband was released on bond after his arrest and obtained his own apartment.

Although husband had been a lieutenant colonel for approximately four years prior to his arrest, he faced the risk of the complete loss of his retirement as a result of the criminal charges against him. He therefore elected to retire from the last grade in which he had "served honorably," the lower rank of major, effective May 31, 2005. Husband's gross retirement pay as a major was approximately $3,200, substantially less than the approximately $9,600 per month he had grossed while serving as a lieutenant colonel. The marital share of husband's retirement was 58%, which would yield a gross marital share of approximately $1,860 per month.

On August 19, 2005, husband pleaded guilty to numerous criminal charges and began serving an active sentence of 36 months.

On March 26, 2006, wife filed a bill of complaint for divorce. At the evidentiary hearing held on October 26, 2007, husband admitted his fault in the breakup of the marriage and stipulated that wife was entitled to 50% of the marital share of his military retirement.

Wife testified that from August 2004 through February 2005, husband paid her $1,000 per month for support. Husband testified he also paid the mortgage and other bills averaging

- 2 -

about $5,000 per month. Husband testified that in February 2005, the court ordered him to pay total spousal and child support of $5,400 per month, at which time he ceased paying the mortgage. When husband retired effective May 31, 2005, his gross income decreased to approximately $3,200, and a "[n]ew court order was entered in August of 2005 [requiring him to pay wife] $1,901" per month in support. Before husband was able to have an order entered decreasing his support payment, he accrued a support arrearage of $7,000 or $8,000 in back support, which he paid, along with numerous other expenses, by withdrawing the entire balance of his $95,000 IRA account. Wife testified that, to her knowledge, the only funds husband had received during his incarceration were his military retirement benefits. No evidence in the record indicated whether husband earned any additional income between his retirement on May 31, 2005, and his incarceration in August 2005.

At the time of the evidentiary hearing on October 26, 2007, the support order for $1,901 remained in effect, and husband was paying support in that amount. Husband testified he was also paying $230 per month for wife's survivor benefit plan and $200 per month for life insurance for himself and wife.

On December 6, 2007, the trial court issued a letter opinion detailing its consideration of the Code § 20-107.3(E) equitable distribution factors, noting husband's negative nonmonetary contributions, misconduct causing the dissolution of the marriage, and dissipation of "substantial marital assets" for a non-marital purpose—"to pay for his bond and attorney fees arising from his criminal charges, to which he ultimately plead guilty." Considering the Code § 20-107.3(E) factors, including "how each party utilized marital property post-separation," the court directed that the marital property be divided as follows:

> A. [Wife] is entitled to receive 50% of the marital share of [husband's] military retirement as permitted under VA. Code § 20-107.3(G)(1). . . .

B. [Wife] has already received *pendente lite*, $90,000 of the net proceeds from the sale of the marital residence and the Court finds that she has appropriately utilized these funds towards paying family expenses and debts that arose during the pendency of this divorce action. The balance of said proceeds, totaling $106,340.57 shall be distributed 80% to [wife] and 20% to [husband]. In making this division the Court has taken into consideration [husband's] withdrawal and use of his IRA funds and [wife's] withdrawal and use of her IRA funds. . . .

The court noted wife's expenditure of $22,763.15 in attorney's fees and husband's expenditure of $26,100 in attorney's fees, and ordered husband to pay $20,000 toward wife's fees and costs, which was roughly equal to husband's share of equity in the home.

The court's final order incorporated the letter opinion and provided as follows:

[Wife] if [sic] entitled to receive 50% of the marital share of [husband's] military retirement as permitted under Virginia Code Section 20-107.3(G)(1), *commencing at the date [husband] retired, May 31, 2005*. She is further entitled to a continuation of the Survivor Benefit Annuity previously selected by [husband], which cost shall be paid from the gross proceeds of the retirement.

(Emphasis added.) In the related qualified domestic relations order (QDRO) entered to effect division of husband's military retirement, the court provided that "[t]o the extent the Designated Agent is prohibited by law or regulation from paying the entire amount required by this order to [wife], [husband] shall personally pay any shortfall to [wife]." Husband objected to the trial court's "grant of retroactive military retirement payments (between date of retirement and date of equitable distribution trial)" and to the requirement that husband make up any shortfall, and he noted this appeal.

## II. ANALYSIS

### A. RETROACTIVE PAYMENTS OF THE MARITAL SHARE OF PENSION BENEFITS

When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party. Wright v. Wright, 38 Va. App. 394, 398, 564 S.E.2d 702, 704

- 4 -

(2002). An appellate court will not reverse a trial court's equitable distribution "unless it appears from the record that the chancellor has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities." Robinette v. Robinette, 10 Va. App. 480, 486, 393 S.E.2d 629, 633 (1990).

Husband contends the court erred in directing that wife receive the agreed upon 50% portion of the marital share of his military retirement benefits *commencing on the date of his retirement*, which occurred after the parties separated but almost a year before wife filed her bill of complaint for divorce and over two years prior to the equitable distribution evidentiary hearing. We agree.

General principles for the valuation and division of property in equitable distribution proceedings also apply to the valuation and division of retirement benefits, including the principle that "[t]he court shall determine the value of any such property *as of the date of the evidentiary hearing on the evaluation issue*." Code § 20-107.3(A); see McGinniss v. McGinniss, 49 Va. App. 180, 188-89, 638 S.E.2d 697, 701 (2006) (implicitly applying this principle to the deferred distribution of retirement benefits in a case in which the owning spouse retired *after* the equitable distribution evidentiary hearing, holding the court erred in "'excluding from the marital share the income earned by pre- and post-marital contributions to the pension'" because "the delay in payment to wife of her marital share of husband's pension until he retired and became eligible to receive his pension 'diminishe[d] the marital share in relation to the number of years that pre- and post-marital contributions [were] made'" (quoting Mann v. Mann, 22 Va. App. 459, 465, 470 S.E.2d 605, 607-08 (2006))). This approach comports with "[t]he developing rule" in a majority of jurisdictions that have considered the issue. 2 Brett R. Turner, Equitable Distribution of Property § 6:32, at 204 (3d ed. 2005) (noting the general rule that "the court cannot order that

payments begin before the date of classification"). The rationale for this rule is that the entirety of "payments received from a marital property pension" *before* the date of classification of property in an equitable distribution proceeding—i.e., ordinarily the date of the evidentiary hearing pursuant to Code § 20-107.3(A)—"are no different from salary or any other type of marital property payments received by a spouse before the date of the property division order." 2 Turner, supra, at 204. They "were marital property when they were received," id., and, thus, ordinary rules regarding how to treat them in the equitable distribution apply, cf. Robinette, 10 Va. App. at 485, 393 S.E.2d at 632-33 (holding that where funds were "pension and retirement benefits" as contemplated by Code § 20-107.3(G) when paid to husband, by the time the court made its monetary award, the funds were under husband's unrestricted control and had lost their character as "pension and retirement benefits" for purposes of the statutory provision limiting the court to awarding the non-owning spouse no more than 50% of such benefits). See generally 2 Turner, supra, at 204-05 (suggesting that "[n]one of the past cases" on retroactivity of payments for the marital share of pensions "have analyzed this issue particularly clearly" and that "[f]uture cases should resolve the retroactive payment issue by applying a dissipation of assets analysis"). "We have previously held that [using] marital funds . . . for living expenses . . . and other necessities of life while the parties are separated [is proper and] do[es] not constitute [improper] dissipation" of marital assets for which the other spouse may be entitled to credit. Anderson v. Anderson, 29 Va. App. 673, 695, 514 S.E.2d 369, 380 (1999).

Here, wife advanced no argument that husband dissipated the retirement funds he received prior to the evidentiary hearing, and the trial court made no such finding. It was undisputed that husband's gross military retirement was approximately $3,200 per month, from which the trial court ruled wife was entitled to "a continuation of the Survivor Benefit Annuity previously elected by [husband], which cost shall be paid from the gross proceeds of the

retirement." The record indicated that the cost of the survivor annuity was $230 per month, leaving adjusted gross monthly retirement pay of $2,970. Husband testified without objection that he paid an additional $200 per month for life insurance for him and wife, a reasonable expenditure given that the parties had two minor children with significant medical problems, which left pre-tax retirement income of $2,770. The record also established that for the first two months after husband began receiving his retirement pay, he was under an outstanding award to pay wife $5,400 per month, a sum roughly twice the amount of his remaining gross monthly retirement income at that time, leaving no marital funds for him to dissipate during that time. For the remaining period of approximately twenty-seven months, husband was under an award to pay wife monthly support of $1,901. Given wife's concession that husband had no income other than his military pension while incarcerated, the evidence established the remainder of husband's pension during each of these twenty-seven months, *before taxes*, was $869. Thus, wife received approximately 70% of husband's monthly retirement benefit during that twenty-seven-month period, and wife neither alleged nor offered any evidence that husband dissipated any of the 30% of the pension payments remaining for him each month between the time of his retirement and the equitable distribution evidentiary hearing on October 26, 2007.

The trial court, by contrast, made an express finding of dissipation as to another marital asset—husband's $95,000 IRA. The court indicated these IRA funds were marital property and that husband withdrew them all during the separation and used some of them to reimburse his sister for money she had loaned him to "pay his bond and pay his attorney." It also held that "[husband's] misconduct and criminal behavior . . . resulted in the dissipation of marital assets and their being expended for non-marital purposes," "[s]pecifically . . . [the use of] substantial marital assets . . . to pay for [husband's] bond and attorney fees arising from his criminal charges." Finally, in awarding 80% of the equity in the marital residence to wife and 20% to

husband, the court indicated it "[took] into consideration [husband's] withdrawal and use of his IRA funds." The trial court made no similar finding of dissipation related to the $869 gross income remaining from husband's pension each month.

Accordingly, we hold the trial court erred in ordering that wife was to receive her share of husband's military retirement "commencing at the date [husband] retired, May 31, 2005." On the facts of this case, the date of commencement should instead have been October 26, 2007, the date of the evidentiary hearing. We hold the court did not err, however, in providing in the related QDRO of May 5, 2008, that husband was responsible for any shortfall to the extent the designated agent was "prohibited by law or regulation from paying it." The QDRO was not entered until May 5, 2008, and provided to the designated agent sometime thereafter, whereas wife was entitled to her share of each payment made after October 26, 2007, over six months earlier. See Irwin v. Irwin, 47 Va. App. 287, 295 n.5, 297, 623 S.E.2d 438, 442 n.5, 443 (2005) (holding that where "wife waived any claim in one-half of the pension payment prior to the date of the final decree," "[t]he court's refusal to require husband to pay wife directly her one-half share of the monthly pension payment while the QDRO was pending was an abuse of discretion upon a finding that she was due payment from the final decree date"). To hold husband could not be required to make payments the designated agent could not make would deprive wife of payments to which she is entitled by statute and would encourage husband, as the owning spouse, to delay voluntary execution of documents related to the QDRO. See id. at 297, 623 S.E.2d at 443 ("Delays in the approval and entering of the QDRO cannot operate to deny wife her property right in the pension."); 2 Turner, supra, at 206 (discussing non-owning spouse's entitlement to recoup payments from the owning spouse where retirement occurs after divorce but direct payments from the plan to the non-owning spouse do not begin in a timely fashion).

### B. WIFE'S REQUEST FOR ATTORNEY'S FEES

Wife requests an award of attorney's fees and costs incurred on appeal. We decline that request. Husband's appeal addressed "appropriate and substantial issues," <u>Estate of Hackler v. Hackler</u>, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004), and husband has, in fact, prevailed on the narrow issue presented. Although the trial court found that husband's criminal wrongdoing was the cause of the divorce and a drastic decline in the income of both parties, wife received the bulk of the remaining marital assets in the equitable distribution, and husband was required to spend all but a few thousand dollars of his share of that award to pay $20,000 of wife's approximately $23,000 worth of attorney's fees in the trial court. Thus, we conclude it is appropriate for wife to bear her own fees and costs incurred in this appeal.

### III.

For these reasons, we reverse that portion of the final decree ordering that payments of wife's share of husband's military pension were to commence on May 31, 2005, but hold the trial court had authority to order husband responsible for any payments due but not payable directly from the pension. We deny wife's request for attorney's fees and costs on appeal, and we remand for further proceedings consistent with this opinion.

<u>Reversed and remanded.</u>