COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Russell and Athey
Argued at Fredericksburg, Virginia

UNPUBLISHED

RONALD P. FERRY

v.        Record No.  1134-19-4

SANDRA M. BEARD

MEMORANDUM OPINION* BY
JUDGE GLEN A. HUFF
FEBRUARY 4, 2020

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Robert J. Smith, Judge

Andrew Hoffman (Solan | Alzamora, PLLC, on briefs), for
appellant.

(Lily A. Saffer; Surovell Isaacs & Levy, PLC, on brief), for
appellee.  Appellee submitting on brief.


Ronald P. Ferry ("husband") appeals from the trial court's order that, in relevant part,

ordered him to pay Sandra M. Beard ("wife") her marital share of his pension payments,

awarded wife attorney's fees, and denied husband's request for attorney's fees.  For the

following reasons, this Court affirms.

I.  BACKGROUND

Husband and wife were divorced on August 26, 2005.  The issue of spousal support was

submitted to the trial court, which awarded wife $650 per month for ten years.  The final decree

also incorporated a separation and property settlement agreement (the "Agreement") dated

August 23, 2005.  The Agreement provided that wife would receive one-half the marital share of

husband's pension:

> Husband is an employee of ABC, Inc.  Husband will be eligible for
> monthly retirement benefits under the ABC, Inc. pension plan

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

based upon employment with ABC, Inc. The parties agree that a court of competent jurisdiction shall enter an order which directs the plan providers of the ABC, Inc. pension to pay directly to Wife such amount as is equal to one-half (½) of the marital share plus the passive growth of Husband's gross monthly annuity under ABC, Inc. pension plan, as, if, and when payable to Husband. . . . Husband shall execute such documents and perform such acts as may be necessary or required so that Wife shall receive her share of the gross monthly annuity . . . including but not limited to any forms which Husband is required to execute in order to effectuate the terms of this Agreement.

The Agreement further provides that the prevailing party in any subsequent enforcement action would be entitled to attorney's fees:

Each Party shall bear his or her own attorney's fees and costs associated with the negotiation and preparation of this Agreement. Provided, however, that in the event either Party shall be compelled to bring suit to enforce the terms of this Agreement, the prevailing Party in such enforcement action shall be due the reasonable attorneys' fees and costs of such enforcement litigation.

On February 23, 2015, wife filed a motion to modify spousal support and for other relief. The motion sought a modification of spousal support due to an injury that left wife partially disabled. The motion also alleged that husband was refusing to provide wife the necessary information to allow her to prepare a Qualified Domestic Relations Order ("QDRO") to divide husband's pension in accordance with the Agreement. It contended that husband had begun drawing $2,700 per month from his pension, but none of those funds were being distributed to wife as required under the Agreement.

On May 6, 2015, wife filed a petition for rule to show cause. Wife contended that husband was in arrears on his spousal support payments. It also reiterated the prior contentions that husband had refused to provide wife with the necessary information to prepare a QDRO to divide the pension payments and that husband had begun receiving pension payments but was not distributing any of those funds to wife. On May 15, 2015, the trial court issued a corresponding rule to show cause.

Shortly thereafter, on September 21, 2015, the matter was stayed pursuant to 11 U.S.C. § 362 by the United States Bankruptcy Court for the Eastern District of Virginia due to husband's then-ongoing bankruptcy proceeding.[1]  On October 9, 2015, wife filed a claim in husband's bankruptcy proceeding for $116,674, representing $31,674 in spousal support arrearages and $85,000 for the unpaid marital share of husband's pension.

On June 16, 2016, the bankruptcy court issued a written order confirming husband's Chapter 13 bankruptcy plan.  The court's order clarified that the spousal support arrearage was a priority claim that would be paid as set forth in the plan.  Further, the claim regarding the pension funds was a non-priority, disputed claim that was to be resolved in state court and any payment on the claim would occur outside the plan.  However, the pension claim would only be discharged by the bankruptcy court following resolution of the state court litigation and certification that the claim was paid in full in accordance with the state court litigation.

The parties resumed litigation in the trial court in early 2018 and, on September 26, 2018, wife filed a motion to reform the Agreement.[2]  Wife contended that reformation was appropriate because the Agreement listed the incorrect pension plan due to either fraud perpetrated by husband or, alternatively, a mutual mistake.  Wife explained that during the bankruptcy litigation, she discovered that husband was not eligible for an ABC, Inc. pension plan, as indicated in the Agreement.  Instead, husband was eligible for a Director's Guild of America ("DGA") pension plan via his employment with ABC, Inc.  Wife also noted that the bankruptcy

---

[1] On September 21, 2015, the bankruptcy court issued a written order giving wife partial relief from the automatic stay to allow her to pursue a spousal support modification and entry of a QDRO pursuant to the terms of the Agreement.  Nevertheless, this litigation remained inactive during the bankruptcy suit until February 9, 2018, when wife filed a motion to set trial date.

[2] On December 28, 2018, the bankruptcy court issued a second written order granting wife partial relief from the automatic stay.  This order superseded the 2015 order and granted wife permission to seek reformation of the Agreement in addition to an appropriate QDRO and modification of spousal support.

proceedings confirmed that husband had been drawing payments from the DGA pension since October 2011.

The matters came before the trial court on March 27, 2019. From the bench, the trial court dismissed the rule to show cause, determining that the failure to disclose information needed to draft a QDRO was "not a matter for a rule to show cause." The court then granted the reformation, finding that husband "intentionally misled" wife into believing there would be an ABC, Inc. pension in order to keep his DGA pension for himself. It ordered husband to pay wife her portion of the pension payments retroactive to October 2011—when he began drawing from his DGA pension—which amounted to $70,074. The trial court ordered husband to pay $200 per month towards this arrearage, in recognition of his limited financial resources. The trial court also awarded wife $35,000 in attorney's fees, payable over two years, based on the Agreement's attorney's fees provision. Lastly, the trial court granted wife's request to modify spousal support and awarded $1,000 per month for seven years. A written order was entered on June 13, 2019, and this appeal followed.

## II. STANDARD OF REVIEW

This Court reviews the interpretation of property and settlement agreements *de novo*. See Plunkett v. Plunkett, 271 Va. 162, 166 (2006) (citing Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631 (2002)). To the extent this case requires statutory interpretation, such matters are also reviewed *de novo*. Friedman v. Smith, 68 Va. App. 529, 539 (2018).

## III. ANALYSIS

### A. Pension Payments

Husband did not appeal the trial court's ruling that granted wife's motion to reform the contract such that the pension provisions applied to husband's DGA pension in lieu of the

non-existent ABC, Inc. pension.[3]  Accordingly, it is undisputed that wife has a vested property interest in 50% of the marital share of husband's DGA pension plan, which amounts to $778.60 per month.  See Irwin v. Irwin, 47 Va. App. 287, 294 (2005) (holding that one's property right in the marital share of his or her spouse's pension that arises from a property settlement agreement vests when it is incorporated into the final decree).  Nor does husband argue that the Agreement, as reformed, cannot be retroactively applied.

Instead, husband argues only that nothing in the Agreement makes him personally responsible for paying wife her marital share of his pension proceeds.  Husband asserts that, because he is not personally responsible for the payments, there is no basis in the Agreement to require him to repay to wife her marital share of the payments he has been receiving since October 2011.

The plain language of the Agreement refutes husband's assertion.  The Agreement provides that "Husband shall . . . perform such acts as may be necessary or required so that Wife shall receive her share of the gross monthly annuity."  Thus, the Agreement does provide a basis for the trial court to order retroactive payments.

Furthermore, husband's argument that the Agreement did not make him personally liable is foreclosed by this Court's precedent.  This Court has repeatedly affirmed a trial court's power to retroactively order one spouse to make payments to the other when pension payments are not distributed as required under a property settlement agreement.  See, e.g., Irwin, 47 Va. App. at 292-99 (holding that the trial court abused its discretion when it refused to order one party to retroactively reimburse the other for pension payments that did not conform to their separation agreement); Williams v. Williams, 32 Va. App. 72, 75-78 (2000) (affirming a trial court's order

---

[3] The trial court granted the reformation "based upon [wife]'s unilateral mistake accompanied by [husband]'s fraud."  As noted above, husband does not challenge on appeal these findings by the trial court.

that one spouse retroactively reimburse the other for insufficient pension payments). Such power arises from Code § 20-107.3(K)(4), which grants courts the power to "[m]odify any order . . . intended to affect or divide any pension . . . to revise or conform its terms so as to effectuate the expressed intent of the order."

Once the trial court determined that wife was not receiving the pension payments she had a vested right to receive, it was empowered to modify its order to effectuate those payments. See Williams, 32 Va. App. at 76. Indeed, refusal to do so would have been reversible error. See Irwin, 47 Va. App. at 297.

In sum, the plain language of the Agreement provides a basis to order the retroactive payments. Furthermore, Code § 20-107.3(K)(4) granted the trial court authority to modify its prior orders in order to require such payments. Therefore, the trial court did not err in ordering husband to repay the portion of the pension payments he received that belonged to wife.

## B. Attorney's Fees

Husband's second and third assignments of error are correlated. In his second assignment of error, husband argues that the trial court erred in awarding wife attorney's fees. Husband contends that, under the terms of the Agreement, attorney's fees could only be awarded to the party which prevailed on an enforcement action. Husband argues that the only enforcement action was the rule to show cause, which was dismissed. Therefore, husband contends that there was no basis to award wife attorney's fees. Furthermore, in his third assignment of error, husband contends that he prevailed on the enforcement action because the rule to show cause was dismissed. Therefore, husband argues, the trial court also erred in denying him attorney's fees.

Generally, whether to award attorney's fees in proceedings related to divorce decrees "is a matter submitted to the sound discretion of the trial court and reviewable on appeal only for an

abuse of discretion." Kane v. Szymczak, 41 Va. App. 365, 375 (2003) (internal quotation marks and citations omitted). Nevertheless, "[a]n abuse of discretion can be found if the trial court uses an improper legal standard in exercising its discretionary function." Congdon v. Congdon, 40 Va. App. 255, 262 (2003) (internal quotation marks and citation omitted). "In suits for divorce . . . if a . . . contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of . . . counsel fee . . . shall be entered except in accordance with that . . . contract." Jones v. Gates, 68 Va. App. 100, 106 (2017) (omissions in original) (quoting Code § 20-109(C)). Therefore, if a property settlement agreement contains a provision awarding attorney's fees, a court abuses its discretion if it fails to abide by the terms of the agreement in awarding attorney's fees. See Rutledge v. Rutledge, 45 Va. App. 56, 61-62 (2005).

"[P]roperty settlement agreements are contracts and subject to the same rules . . . of interpretation as other contracts." Irwin, 47 Va. App. at 292-93 (quoting Smith v. Smith, 3 Va. App. 510, 513 (1986)). In reviewing a property settlement agreement, this Court determines "the intent of the parties and the meaning of the language . . . from an examination of the entire instrument, giving full effect to the words the parties actually used." Jones, 68 Va. App. at 106 (quoting Layne v. Henderson, 232 Va. 332, 337-38 (1986)). "Where there is no ambiguity in the terms of a contract, [this Court] must construe it as written." Smith, 3 Va. App. at 514.

The Agreement provides that "in the event either Party shall be compelled to bring suit to enforce the terms of this Agreement, the prevailing Party in such enforcement action shall be due the reasonable attorneys' fees and costs of such enforcement litigation." "Enforcement is defined as '[t]he act or process of compelling compliance with a . . . decree or agreement.'" Jones, 68 Va. App. at 107 (quoting Enforcement, Black's Law Dictionary (9th ed. 2009)).

Wife's attempt to effectuate her vested right under the Agreement to 50% of the marital share of husband's pension was plainly an enforcement action. Indeed, husband agreed that the rule to show cause was an enforcement action. Husband contends, however, that wife's concomitant motions—which sought the same result—were not enforcement actions. In essence, husband claims that the analysis of whether an action is an enforcement action turns on the procedural mechanism utilized. In doing so, husband places heavy reliance on this Court's decision in Jones. Jones, however, lends no credence to husband's attempt to elevate procedure over substance.

In Jones, the two parties disagreed on the proper language that would be included in a Military Qualifying Court Order ("MQCO") that was required to divide the husband's military retirement in accordance with a property settlement agreement. 68 Va. App. at 104. The dispute came before the trial court, which entered a modified version of wife's MQCO. Id. Husband then sought attorney's fees under the parties' property settlement agreement, arguing that the MQCO hearing was an enforcement action and that he prevailed. This Court affirmed the trial court's denial of husband's motion for attorney's fees, holding that the request to enter an MQCO was not an enforcement action. The Court noted that "[a]n action to enforce a contractual obligation *often* originates with a rule to show case." Id. at 107 (emphasis added) (collecting cases). However, it explained that the key characteristic that distinguishes an enforcement action is whether one party is "in default of the agreement" or whether the parties are "merely acting in furtherance of the agreement." Id. This Court determined that the MQCO hearing was not an enforcement action because neither party was in default and wife was acting in furtherance of the property settlement agreement.

Husband's focus on the procedural mechanism that brings an issue before a court is misplaced. As Jones explained, the key distinction is whether the action was brought because

one party is in default of their obligations.  Accordingly, enforcement actions are not limited to rules to show cause.  See, e.g., Stacy v. Stacy, 53 Va. App. 38, 49-50 (2008) (recognizing that wife's defense of husband's motion to terminate spousal support may qualify as an enforcement action and remanding the case for consideration of wife's request for attorney's fees).

Here, husband was in default of the Agreement.  The trial court found that he "intentionally misled" wife in order to hide his actual pension account when the Agreement was made.  He refused to disclose any information related to his pension account for well over a decade.  Husband began drawing the pension proceeds without notifying wife or providing her any of the funds in which she had a vested property right.  Because of husband's deception, $70,074 of pension proceeds were misappropriated to him despite wife having equitable title to those funds.  Wife's actions sought to enter an appropriate QDRO and to recover the funds which were misappropriated by fault of husband.  Under these circumstances, wife's action for reformation of the Agreement and retroactive payment were enforcement actions.[4]

## IV.  CONCLUSION

Wife had a vested property right to husband's pension payments, and the Agreement required that husband take necessary measures to ensure that wife received her share of the payments.  Therefore, the trial court did not err in ordering husband to reimburse wife for the payments he received in violation of her property rights.  Furthermore, wife prevailed on the

---

[4] This conclusion is underscored by the language of the Agreement.  Although the Agreement does not define an "enforcement action," it unambiguously equates an enforcement action with its antecedent:  a "suit to enforce the terms of [the] Agreement."  Thus, wife's "enforcement action" is not restricted to a single pleading at the trial court; it consists of the entire "suit to enforce the terms of [the] Agreement."  In other words, the "enforcement action" incorporates the entirety of wife's cause of action to effectuate her vested property right in 50% of the marital share of husband's pension.  This includes not only the rule to show cause, but wife's concomitant motions which sought the same relief as well.

- 9 -

enforcement action seeking reformation and reimbursement. Accordingly, the trial court did not err when it awarded wife attorney's fees and denied husband's request for attorney's fees.

Furthermore, both parties requested attorney's fees in connection with this appeal. Like the proceeding in the trial court, this appeal is an "enforcement action" within the meaning of the Agreement.[5] Therefore, wife is entitled to appellate attorney's fees under the agreement as the prevailing party. Accordingly, this Court remands this matter to the trial court to determine what fees wife, as the prevailing party in this appeal, is entitled to under the terms of the Agreement.

<u>Affirmed and remanded.</u>

---

[5] At oral argument, husband argued he was entitled to appellate attorney's fees because the appeal was a further proceeding seeking enforcement of his rights under the Agreement. Essentially, he argued that an appeal of an enforcement action is itself an enforcement action. Husband is bound by that argument. <u>Cangiano v. LSH Bldg. Co.</u>, 271 Va. 171, 181 (2006) ("A party may not approbate and reprobate by taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory."). Because this Court now concludes that the entire case below was an enforcement action, husband's argument necessarily means the entire case in this Court is an enforcement action.