COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Fulton and White
Argued at Fredericksburg, Virginia


GLENN DANCE

v.      Record No. 0315-22-4

LEEANN S. DANCE                                        MEMORANDUM OPINION[*] BY
                                                     JUDGE MARY BENNETT MALVEAUX
LEEANN S. DANCE                                              MAY 23, 2023

v.      Record No. 0314-22-4

GLENN DANCE


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stephen C. Shannon, Judge

Adam T. Kronfeld (Surovell Isaacs & Levy PLC, on briefs), for
Glenn Dance.

Joseph A. Condo (Offit Kurman, on briefs), for LeeAnn S. Dance.


In these consolidated appeals, both Glenn Dance ("husband") and LeeAnn S. Dance

("wife") appeal from the circuit court's order finding husband in violation of the parties' property

settlement agreement ("PSA").  On appeal, husband argues that the circuit court erred: (1) in finding

that husband did not disclose his Ernst & Young profit-sharing plan to wife prior to execution of the

parties' PSA; (2) in finding that wife is entitled to a share of the profit-sharing plan; (3) in dividing

the profit-sharing plan without conducting an equitable distribution hearing and without

consideration of the equitable distribution factors under Code § 20-107.3; (4) in granting wife

attorney fees; (5) in finding that husband violated the PSA; (6) in finding that the action brought by

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

wife was an enforcement action; (7) in deducting taxes from wife's share of the profit-sharing plan at husband's effective tax rate rather than his marginal tax rate; and (8) in failing to make the deductions for taxes from wife's share of the profit-sharing plan retroactive to the date of the PSA or the date of divorce. Wife argues that the circuit court erred: (1) in ordering that husband deduct taxes from her share of the profit-sharing plan at his tax rate, rather than at her tax rate; (2) in failing to award wife attorney fees in the full amount incurred in enforcing the PSA; (3) in awarding husband attorney fees; (4) in miscalculating the amount of husband's attorney fees; and (5) in denying wife's motion to reopen the record and for sanctions. For the following reasons, we affirm in part, reverse in part, and remand to the circuit court.

## I. BACKGROUND

Husband and wife were married on September 27, 1997. On December 1, 2020, the parties executed the PSA. Husband filed for divorce on December 7, 2020. On June 7, 2021, the circuit court entered a final decree of divorce which affirmed, ratified, and incorporated the parties' PSA.

Relevant to these appeals, the PSA provides, in Paragraph 16(A), that "[t]he parties agree to equally divide the following retirement assets," including husband's "Ernst & Young LLP pension, which yields a total of approximately $20,000 per month." In addition, "[t]he parties will each be separately responsible for the payment of taxes on any retirement proceeds that he/she receives subsequent to the execution of this [a]greement." Related to these provisions, Paragraph 16(G) provides that each party had disclosed all their respective retirement benefits. In Paragraph 24, the PSA addresses attorney fees, providing for the award of reasonable attorney fees to a party who either enforced provisions of or defended claims against the PSA. Paragraph 29 of the PSA states that the agreement was based on the parties' full disclosure of assets and allows a court to divide any non-disclosed asset with a value in excess of $1,000.

- 2 -

On the date of the entry of the final decree of divorce, the circuit court also entered a qualified domestic relations order ("QDRO") in relation to husband's "Ernst & Young Partnership Defined Benefit Retirement Plan" ("defined benefit plan"). The QDRO provided that wife would receive half of husband's benefits from the plan. At the same time, the circuit court entered another QDRO in relation to husband's "Ernst & Young Partnership Retirement Plan" ("profit-sharing plan"), in which the court ordered that wife also receive half of husband's benefits under that plan.

On August 31, 2021, wife filed a petition for declaratory judgment, specific performance, and/or reformation. In the petition, wife alleged that when the QDROs dividing the Ernst & Young pension were submitted to the plan administrator, the administrator notified her that Ernst & Young would only pay wife $1,200 per month, not the roughly $10,000 per month set forth in the PSA. Wife stated that she had notified husband and demanded he pay the difference, and he had refused. Wife asserted that husband had informed her that he was terminating the deposit of the pension into the parties' joint account and had told her to stop withdrawing her share from this account. Wife asked the circuit court to enter an order of declaratory judgment that she was entitled under the PSA to one-half the full Ernst & Young monthly retirement benefit, and order husband to pay directly to her the portion of the monthly payment that she was not receiving. In the alternative, wife asked the court to reform the PSA, based on husband's "fraudulent failure to disclose . . . or affirmative concealment" of the fact that a substantial portion of the payments he represented as his Ernst & Young pension was in the form of a profit-sharing plan. Wife also asked to be awarded attorney fees and costs.

That same day, wife also filed a petition for a rule to show cause. In the show cause petition, wife asserted that husband's refusal to pay her half of the full amount of the Ernst &

Young pension as provided in the PSA violated the agreement. Wife asked the court to find husband in contempt and also asked to be awarded her attorney fees and costs.

On November 1, 2021, wife filed an amended petition for declaratory judgment, specific performance, and/or reformation, asking the court in this petition to also determine whether husband's or wife's tax rate should apply to the reduction of wife's share of the profit-sharing plan. On November 9, 2021, husband filed an answer and response to wife's petition, asserting that the PSA did not award wife half of his profit-sharing plan and also asking to be awarded attorney fees and costs.

On November 10, 2021, the circuit court held a hearing on wife's petition. At the outset of the hearing, wife withdrew her rule to show cause. Wife testified as to the retirement provisions in the PSA, stating that the $20,000 figure in Paragraph 16(A) of the PSA reflected the amount of Ernst & Young retirement benefits that husband "ha[d] been receiving and continue[d] to receive." Wife introduced bank deposit records into evidence which showed that husband was receiving $2,402 from an "IDBRP" plan (the defined benefit plan) and $16,858 from a "Firm Retirement Plan" (the profit-sharing plan). Husband retired from Ernst & Young in July 2014 and had been receiving these retirement payments since the end of 2014 or early 2015. The payments were deposited into the parties' joint checking account and, at the time of the hearing, were still being deposited into this account. Wife was withdrawing half of the profit-sharing plan from that account, reduced by 24%, her tax rate as calculated by her financial advisor. Wife testified that husband had instructed her to stop withdrawing this payment. However, she affirmed that husband had not done anything to prevent her from withdrawing the funds from the joint account.

Wife testified that the parties had three meetings with their financial advisor in June and July 2020 in order for the advisor to prepare financial projections to assist them in reaching a

- 4 -

property settlement agreement. Wife testified that during a meeting with the parties' financial advisor, they agreed to equally divide "the full pension."

After the QDROs were entered by the circuit court, wife contacted a retirement benefits employee with Ernst & Young and was informed that the profit-sharing plan was not eligible to be divided pursuant to a QDRO. She testified that prior to contacting Ernst & Young, she was unaware that part of husband's pension was in the form of a profit-sharing plan and that husband had not told her that part of the pension was in the form of the profit-sharing plan. Her attorney contacted husband, who responded with an email asserting that pursuant to the PSA, wife was only entitled to half of his retirement assets and that the profit-sharing plan was not a retirement asset, but rather "a share of future earnings." Husband also stated in his email that wife had hired an attorney prior to their separation. Accordingly, he "believe[d] she had ample opportunity to explore the legal issues surrounding the issuance of QDROs with respect to payments from [Ernst & Young]" prior to executing the PSA and did not "believe it was [his] responsibility to explore those issues with [Ernst & Young]."

Husband was employed as a CPA and tax attorney. He testified during the hearing that in his experience as an accountant, "an asset has a very distinct meaning" which "refers to something like a funded . . . amount that you can draw on later to pay retirement benefits." Husband stated that the profit-sharing plan was not an asset but rather was "contingent earnings that the firm may or may not allocate to [him] in the future." Thus, according to husband, if the parties had intended that wife was to receive half of the profit-sharing plan, "then they would have used the word income or proceeds, like they d[id] elsewhere in the agreement." Regarding Paragraph 16(G) of the PSA, concerning the disclosure of retirement benefits, husband stated, "[W]hen I looked at the agreement and I saw retirement assets, I interpret[ed] that to mean that it was only that portion that was the funded part of the [Ernst & Young] plan that was being

- 5 -

divided between us." It was also his understanding that wife had waived her interest in the profit-sharing plan in exchange for a $350,000 monetary award from him that she received under the PSA.

Husband stated that wife had knowledge about the difference between his defined benefit plan and profit-sharing plan because on the parties' joint tax filings, "there were two line items for [Ernst & Young], one was a line item for the retirement benefit, which was denoted on a 1099 that they sent to us," and the "other was a share of firm earnings, which is denoted on Schedule K-1." He acknowledged that he had prepared the parties' tax forms and noted that wife had signed the forms, but that she was not an accountant. When asked if husband had ever pointed out to wife that the $16,850 deposited into the parties' joint account correlated to the Schedule K-1 that was filed with the parties' tax returns, husband stated that he "never connected those dots for her." In addition to the tax returns, husband also testified that he had conversations with wife about the nature of the profit-sharing plan. Specifically, husband stated that he had a conversation with wife sometime after September 2017 "about the fact that a portion of the [Ernst & Young] pension plan involved an allocation of future firm earnings contingent on various events." Husband denied concealing information from wife concerning the nature of the profit-sharing plan.

Husband further testified that while there was no reference to the profit-sharing portion of his Ernst & Young pension in the PSA, he did not "think it was [his] responsibility to put in there the specific references to the various components of the plan." He agreed that the PSA did not address that "the [Ernst & Young] pension of approximately $20,000 that is referred to in [Paragraph] 16(A)(1) . . . consist[s], in part, of future earnings."

On redirect, wife denied having a conversation with husband regarding the nature of the profit-sharing plan. She stated that she would not have signed the PSA if she had known that the profit-sharing portion of the Ernst & Young pension would not be distributed to her.

After hearing argument, the circuit court found that husband did not commit fraud but that he had "violated [Paragraph] 16(G) of the agreement with regard to the disclosures, which triggers Paragraph 29." The court ordered that husband pay wife one-half of the profit-sharing plan and that he was "entitled to take his tax liability off the top," but that the deduction of his tax liability would not be retroactive. The court declined to award attorney fees to either party.

On November 15, 2021, wife filed a motion to reconsider, asking the court to reconsider its ruling on attorney fees because the terms of the PSA mandated an award of fees to wife and a denial of fees to husband. Wife also asked the court to reconsider its ruling applying husband's tax rate to the reduction in wife's share of the profit-sharing plan.

On November 19, 2021, husband filed a response to wife's motion to reconsider and a cross-motion to reconsider. In his motion, husband asked the court to award his attorney fees and costs "incurred in his successful defense" of wife's show cause petition.

On December 3, 2021, the circuit court held a hearing on the parties' respective motions to reconsider.[1] At the hearing, the court declined to reconsider its tax-rate ruling but did clarify "that the tax rate applied would be [husband's] effective tax rate, not his marginal tax rate as he had proposed." The court also declined to reconsider its ruling that husband's ability to deduct his tax liability from payments to wife would not be retroactive to the parties' execution of the PSA or the entry of the divorce decree. However, the court did reconsider its initial ruling on attorney fees. The court found that wife "was entitled to an award of attorney's fees based on

---

[1] There is no transcript of this hearing in the record; rather, a written statement of facts was signed by the circuit court on March 17, 2022.

her having prevailed on her claim that [husband] has violated the terms of Paragraph 16[(G)]" of the PSA, but that she "should not be awarded fees associated with the [r]ule to [s]how [c]ause issued against [husband], which was withdrawn at the outset of the November 10, 2021, hearing." The court found that husband was entitled to an award of attorney fees based on "his successful defense against the [r]ule to [s]how [c]ause" and "having prevailed on the issue of the tax rate to be applied to the payments the court ordered him to make to [wife]."

On January 14, 2022, wife filed a motion to reopen the record and for sanctions. Wife asked the court to reopen the record to receive expert testimony concerning the tax treatment of the profit-sharing plan payments husband had been ordered to make to her. Wife also asked the court to impose sanctions on husband because, during negotiations on a proposed order for the court and on the draft order, counsel for husband had changed the phrase "effective tax rate" to "marginal tax rate," contrary to the court's prior ruling that husband's effective tax rate would be used.

At a January 28, 2022 hearing, after hearing argument, the court "decline[d] to reopen the evidence for the purpose of trying to figure out a [tax] workaround." The court also denied wife's motion for sanctions. That same day, the circuit court entered a final order reflecting the court's rulings from the November 10, 2021, December 3, 2021, and January 28, 2022 hearings.

On February 17, 2022, husband filed a second motion to reconsider, which the court denied.

Husband and wife both now appeal the circuit court's January 28, 2022 final order.[2]

_____

[2] This order was dated December 1, 2021, when the record was filed in this Court. If filed on that date, neither party's notice of appeal would have been timely filed. *See* Rule 5A:6(a). After this Court ordered the parties to file supplemental briefing addressing whether the December 1, 2021 order was the final order in this case, the circuit court entered a nunc pro tunc order stating that "the order in this cause dated December 1, 2021, was, in fact, entered on January 28, 2022."

II. ANALYSIS

## A. Husband's Appeal

### 1. Disclosure of Profit-Sharing Plan

Husband argues that the circuit court erred in finding that he did not disclose the profit-sharing plan to wife prior to the execution of the parties' PSA.

"On appeal, the trial court's findings of fact are accorded great deference and its judgment will not be set aside unless plainly wrong or without evidence to support it." *Stroud v. Stroud*, 54 Va. App. 231, 236 (2009). However, "[t]he trial court's interpretation of [a] PSA is an issue of law that we review *de novo*." *Stacy v. Stacy*, 53 Va. App. 38, 43 (2008) (en banc).

The PSA provides, in Paragraph 16(A), that "[t]he parties agree to equally divide the following retirement assets," including husband's "Ernst & Young LLP pension, which yields a total of approximately $20,000 per month." Paragraph 16(G) states that "[e]ach party hereby warrants and represents that except as specifically identified hereinabove, he or she has no other retirement accounts or benefits of any nature whatsoever, including but not limited to IRAs, defined benefit plans, defined contribution plans, deferred compensation plans, profit sharing plans, pensions or annuities." Additionally, in Paragraph 29, the agreement provides that

> [t]he above and foregoing [a]greement of the parties is predicated upon the fact that each of the parties hereto has made a full, complete and total disclosure to the other of the nature and extent of all the assets or obligations of the parties, of the sources and amounts of their income of every type whatsoever, and of all other financial facts relating to the subject matter of this [a]greement.

---

Under Code § 8.01-428(B), "[c]lerical mistakes in all judgments or other parts of the record and errors therein arising from oversight or from an inadvertent omission may be corrected by the court at any time on its own initiative or upon the motion of any party." It is clear from the record that the circuit court's nunc pro tunc order was a proper correction of the record under Code § 8.01-428(B). The order purporting to be entered on December 1, 2021, addresses the court's rulings from its December 3, 2021 hearings, which is clearly an impossibility. Further, it is clear that at the January 28, 2022 hearing the court had yet to enter an order in the case, as at the outset of that hearing, the court stated that the parties were present that day "for the entry of an order."

> As to any asset of the parties or either of them with a value over $1,000 to which no such full disclosure has been made by either of the parties, then this [a]greement shall become null and void as to said non-disclosed asset(s), and any court having competent jurisdiction, upon such subsequent discovery of asset(s) of either party, shall retain full jurisdiction to divide such additional asset(s).

After hearing evidence, the circuit court found that husband "violated [Paragraph] 16(G) of the agreement with regard to the disclosures, which triggers Paragraph 29," and ordered, pursuant to Paragraph 29, that husband pay wife one-half of the profit-sharing plan.

Husband argues that the circuit court erred in this ruling because wife did not produce evidence that she was actually denied access to information concerning the retirement plan or that she was unable to investigate the nature and extent of husband's retirement assets. Husband asserts that, "[t]o the contrary, the record reflects that the information that [wife] complains not to have been provided was readily available to her, even if it was not expressly highlighted by [husband] or his counsel."

We reject husband's argument and conclude that the circuit court did not err in finding that husband violated Paragraph 16(A) of the PSA by not disclosing the profit-sharing plan portion of his Ernst and Young retirement account. The record supports the finding that husband failed to disclose the profit-sharing portion of his Ernst and Young pension, which was partly a defined benefit plan and partly a profit-sharing plan. Wife testified that husband had not disclosed to her that part of husband's pension was in the form of a profit-sharing plan. While husband testified that he had conversations with wife about the nature of the profit-sharing plan, on redirect, wife denied having these discussions. The court necessarily credited wife's testimony on this issue rather than husband's testimony, and we "do[] not retry the facts, reweigh the preponderance of the evidence, or make [our] own determination of the credibility of

witnesses." *Moreno v. Moreno*, 24 Va. App. 190, 195 (1997) (quoting *Wagner Enters., Inc. v. Brooks*, 12 Va. App. 890, 894 (1991)).

Husband also contends that wife was aware of the existence of the profit-sharing plan due to the parties' joint tax returns, which included two separate line items for the Ernst & Young pension. However, husband acknowledged that he prepared the tax forms and noted that while wife signed the parties' tax forms, she was not an accountant. Further, when asked if husband had ever pointed out to wife that the $16,850 deposited into the parties' joint account correlated to the Schedule K-1 that was filed with the parties' tax return, husband stated that he "never connected those dots for her." In addition, husband testified that while there was no reference to the profit-sharing portion of his Ernst & Young pension in the PSA, he did not "think it was [his] responsibility to put in there the specific references to the various components of the plan." Based on these circumstances, we conclude that the circuit court's factual finding that husband failed to disclose his Ernst & Young profit-sharing plan is supported by the record.[3]

### 2. Equitable Distribution Hearing

Husband argues that the circuit court erred in not conducting an equitable distribution hearing regarding the profit-sharing plan because Paragraph 29 of the PSA does not direct a specific division of a non-disclosed asset. Husband asserts that at the time the PSA was

---

[3] Husband also argues that the circuit court erred in finding that wife was entitled to a share of the profit-sharing plan. He asserts that if he did not fail to disclose the profit-sharing plan, and thus the remedy provided for in Paragraph 29 of the PSA did not apply, the circuit court had no authority to divide the profit-sharing plan. Because we conclude that the evidence in the record supported the circuit court's finding that husband failed to disclose the profit-sharing plan, we reject husband's contention that the circuit court had no authority to divide this retirement asset. In addition, we note that even without the non-disclosure provisions of the PSA, the circuit court had the authority to divide husband's profit-sharing plan pursuant to Code § 20-107.3(K)(4). That code section provides that "[t]he court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate . . . any order . . . intended to . . . divide any pension, profit-sharing or deferred compensation plan . . . to revise or conform its terms so as to effectuate the expressed intent of the order." Code § 20-107.3(K)(4).

executed, the parties were husband and wife, and prior to execution of the PSA, the only jurisdiction that the circuit court otherwise would have possessed to divide a marital asset would have been equitable distribution of marital property under Code § 20-107.3.

However, husband's argument ignores the plain language of the PSA. "Property settlement agreements are contracts and are subject to the same rules of construction that apply to the interpretation of contracts generally." *Price v. Peek*, 72 Va. App. 640, 646 (2020) (quoting *Jones v. Gates*, 68 Va. App. 100, 105 (2017)). "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Irwin v. Irwin*, 47 Va. App. 287, 293 (2005) (quoting *Wilson v. Holyfield*, 227 Va. 184, 187 (1984)). "Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." *Plunkett v. Plunkett*, 271 Va. 162, 167 (2006).

Paragraph 29 of the PSA states that "any court having competent jurisdiction . . . shall retain full jurisdiction to divide . . . additional [non-disclosed] asset(s)." The parties simply agreed to allow a court to "divide" any non-disclosed asset. There is no language in Paragraph 29 mandating that the court dividing the asset conduct an equitable distribution hearing. In the absence of such language, the court was permitted to divide the profit-sharing plan without holding an equitable distribution hearing. To hold, as husband urges, that the PSA required the circuit court to conduct equitable distribution prior to dividing a non-disclosed asset would require this Court to impermissibly write words into the PSA. "Upon review, this Court 'cannot read into [the contract] language which will add to or take away the meaning of words already contained therein.'" *Allen v. Allen*, 66 Va. App. 586, 596 (2016) (alteration in original) (quoting *Wilson*, 227 Va. at 187).

### 3. Tax Rate Deduction

Husband contends that the circuit court erred in deducting from wife's share of the profit-sharing plan taxes calculated using his effective tax rate rather than his marginal tax rate.

At the November 10, 2021 hearing, husband noted that when the profit-sharing plan proceeds were distributed, the funds were solely in his name and therefore he incurred tax liability on the gross amount of those funds. Husband testified that he had paid taxes in 2021 on the profit-sharing plan funds at his effective tax rate. At the January 28, 2022 hearing, husband argued that the court should deduct his marginal rather than his effective tax because he

> receives his income from other sources. He receives his income, his share of the income from his profit sharing, and then he receives [wife's] share from his profit sharing on top of that. And so whereas in some circumstances one might describe all of the income received as a pool, it truly is a stack that bears on top of whatever income he receives on his own as his income that he pays his taxes on. He then on top of all of that receives [wife's] share, and he's necessarily paying whatever his top rate or top marginal rates are on top of that. And so if his effective rate is 13 percent but the marginal rate at which he's paying [wife's] taxes on the share of her money that's coming to him as the intermediary before going to her, he is then paying, in some years it may be 28 percent, some years it may be 35 percent. And as tax laws change, who knows what it might be. So allowing him only to deduct his marginal rate, effectively give [wife] a windfall and has him paying a percentage on top of what he would otherwise be paying for her to receive that money. The cost of her receiving that money is him incurring that higher tax rate.

The court ruled that husband could deduct taxes from the profit-sharing plan payments made to wife "calculated using [husband's] effective state and federal tax rates for the preceding year, as reflected on his state and federal income tax returns for the preceding year."

As he did before the circuit court, husband asserts on appeal that when he receives the profit-sharing plan funds, prior to paying half to wife, he incurs taxes on those funds at his highest marginal tax rate. Thus, he contends, he pays a greater amount in taxes than he is permitted to deduct from wife's share. Husband argues that such an arrangement contradicts

Paragraph 16(A) of the PSA, which provides that each party "will each be separately responsible for the payment of taxes on any retirement proceeds that he/she receives subsequent to the execution of this [a]greement."

Contrary to husband's argument, we conclude that the determination of whether husband's marginal or effective tax rate should be deducted from wife's share is not controlled by the language of the PSA. The PSA only provides that each party is responsible for "the payment of taxes on any retirement proceeds" he or she receives and is silent as to whether the party's marginal or effective tax rate should apply. That is so because the parties' PSA was written with the intention that wife would directly receive her share from Ernst & Young, not from husband. Because this issue was not addressed in the PSA, the court had the ability to determine whether husband's effective or marginal tax rate would apply. Code § 20-109(C) states, in pertinent part, that in divorce proceedings, if a "contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order . . . establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that . . . contract." Our Court has held that Code § 20-109 "restricts the action a trial court may take where the parties have agreed upon a matter" but "does not prohibit a trial court from ordering a course of action upon a matter that the parties do not address in their property settlement agreement, provided the court is not otherwise precluded from doing so and the course of action is appropriate." *Sanford v. Sanford*, 19 Va. App. 241, 250 (1994).

A review of the record indicates that the court's determination that husband's effective tax rate should be applied was not in error. Husband argues that wife's share of the profit-sharing plan funds, which come directly to him, will impact his marginal tax rate. However, he testified that in 2021, he paid taxes on the profit-sharing plan funds at his effective

- 14 -

tax rate.  Here, the court did not err in determining that he was entitled to deduct taxes at his effective tax rate, reflecting the amount of taxes he actually will pay in relation to the profit-sharing plan.

4.  Retroactivity of Tax Deductions

Husband argues that the circuit court erred in failing to make the deductions for taxes from wife's share of the profit-sharing plan retroactive to the date of the PSA or the date of divorce.

At the November 10, 2021 hearing, counsel for husband asked the circuit court whether the deduction of husband's taxes from wife's share of the profit-sharing plan would be retroactive to the first month where wife withdrew the funds from the joint account.  The court stated that the tax withdrawing would not be retroactive but would rather be "going forward." The court's final order specifically orders husband to directly pay wife, "by automatic transfer, beginning on December 1, 2021," half of the profit-sharing plan "adjusted for taxes."  In husband's February 17, 2022 motion to reconsider, husband asked the court to make the tax reduction of wife's share of the profit-sharing plan retroactive to the date of the entry of the PSA, which the court denied.

On appeal, husband argues that there is nothing in the plain language of the PSA to support the court's ruling that the tax deductions from wife's share would start on December 1, 2021, instead of the date of the execution of the PSA or the entry of the final decree of divorce. Instead, he notes that Paragraph 48 of the PSA states that "[t]his [a]greement shall become effective upon the date by which both parties have affixed their signatures hereto," in this case, December 1, 2020.

Code § 20-155 provides that "[m]arried persons may enter into agreements with each other for the purpose of settling the rights and obligations of either or both of them" and that

"such marital agreements shall become effective immediately upon their execution." Our Court has held that "property rights and interests [become] vested in the parties when they [agree] upon them, set them forth in a valid separation agreement, and [have] them incorporated into their final divorce decree." *Irwin*, 47 Va. App. at 294 (alterations in original) (quoting *Himes v. Himes*, 12 Va. App. 966, 970 (1991)). "Such an agreement creates vested property rights in the parties by virtue of the judicial sanction and determination of the court" and constitutes "a final adjudication of the property rights of the parties" to the divorce action. *Id.* (quoting *Shoosmith v. Scott*, 217 Va. 290, 292 (1976), *aff'd on reh'g*, 217 Va. 789, 793 (1977)).

Under the circumstances of this case, we conclude that husband's right to deduct taxes from wife's share of the profit-sharing plan did not vest at the time of the execution of the PSA or entry of the final decree of divorce. As noted above, the PSA contemplated that wife would receive half of husband's profit-sharing plan directly from Ernst & Young via a QDRO. As such, there is no language in the PSA regarding husband's tax deductions from wife's share of the profit-sharing plan, as the parties did not anticipate that husband would have to receive the funds from Ernst & Young and then distribute half to wife. Accordingly, husband's right to deduct taxes from wife's share of the profit-sharing plan did not vest at either the execution of the PSA or the entry of the final decree of divorce as it was clearly not a provision of the agreement itself. Further, in light of the absence of any guidance from the PSA, we hold that the circuit court did not abuse its discretion in not applying the tax deduction retroactively. *See Irwin*, 47 Va. App. at 297 (applying abuse of discretion standard in relation to argument that the circuit court erred in not ordering husband to pay pension payments retroactively).

5. <u>Circuit Court Attorney Fees</u>

Husband argues that the court erred in awarding attorney fees to wife.

"It is well-settled that parties may 'adopt contractual provisions shifting the responsibility for attorneys' fees to the losing party in a contract dispute.'" *Jones*, 68 Va. App. at 106 (quoting *Ulloa v. QSP, Inc.*, 271 Va. 72, 81 (2006)). Code § 20-109(C) provides that "no decree or order directing the payment of . . . counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract." Accordingly, "if a property settlement agreement contains a provision awarding attorney's fees, the court must follow the terms of that agreement, to the extent allowable by law." *Jones*, 68 Va. App. at 106. Here, the parties' PSA provided, in Paragraph 24, that if a party incurred expenses "in the successful enforcement of any of the provisions of this [a]greement and/or the successful defense of any claims against this [a]greement," the other party would be "responsible for and will pay forthwith any and all reasonable expenses incurred, including but not limited to legal fees, court costs, investigator's fees, and travel."

Husband argues that the circuit court erred in finding that Paragraph 24 compelled an award of attorney fees to wife because the court erred in finding that her petition was an enforcement action.

"Enforcement is defined as '[t]he act or process of compelling compliance with a . . . decree or agreement.'" *Jones*, 68 Va. App. at 107 (alteration in original) (quoting *Enforcement*, *Black's Law Dictionary* (9th ed. 2009)). Husband, relying on *Jones*, argues that wife's petition for declaratory judgment, specific performance, and/or reformation was not an enforcement action because it involved the interpretation of and determination of the parties' rights and obligations under the parties' PSA. In *Jones*, the parties disagreed on the proper language to be included in a military qualifying court order ("MQCO") that was required in order to divide the

- 17 -

husband's military retirement in accordance with a PSA. *Id.* at 104. The dispute came before the circuit court, which entered a modified version of the wife's MQCO. *Id.* The husband then sought attorney fees under the parties' PSA, arguing that the MQCO hearing was an enforcement action and that he had prevailed. *Id.* at 105. This Court determined that the MQCO hearing was not an enforcement action because the wife "was merely acting in furtherance of the agreement by submitting a proposed MQCO to the court" and the "[h]usband's objection to language in wife's proposed order did not transform her request for its entry into an action for enforcement." *Id.* at 107.

Here, unlike in *Jones*, the parties were not simply acting to effectuate the terms of the PSA. Rather, they disagreed as to whether husband had an obligation under the PSA to divide the profit-sharing plan with wife. In this case, while husband notes that wife withdrew her petition to show cause prior to the initial hearing, this is not dispositive as to whether wife's remaining petition was an action for enforcement. Wife filed her petition for declaratory judgment, specific performance, and/or reformation to enforce husband's compliance with one of the provisions of the PSA, that she receive half of his Ernst & Young pension benefit. Husband disputed that wife had any right to the profit-sharing portion of his pension. Thus, we conclude that wife's attempt to make husband comply with her right under the PSA to one-half of the profit-sharing plan that was a part of husband's pension benefit was an enforcement action.

Husband also argues that the circuit court erred in finding that wife's petition was an enforcement action because the court mistakenly found that he had violated the parties' PSA. Here, the court held that husband "violated [Paragraph] 16(G)" of the PSA, which states that "except as specifically identified hereinabove, [husband or wife] has no other retirement accounts or benefits." Husband asserts that any "representation, disclosure or lack of disclosure by [husband] necessarily occurred *prior* to the execution of the PSA, and logically cannot

constitute a subsequent 'breach' or 'violation' of the PSA to be 'enforced' and to require an award of litigation costs under Paragraph 24 of the PSA."

We find no merit in this argument. As noted above, at the time the PSA was executed, husband failed to disclose the profit-sharing plan to wife. Husband thus violated the PSA at the time of its execution, and from that time forward wife could properly enforce compliance with the PSA under Paragraph 29 by bringing a non-disclosed asset before the circuit court for division. Therefore, because husband violated the PSA at the time of its execution, wife was entitled to attorney fees for enforcing his compliance with the PSA.

Husband finally argues that the wording of Paragraph 29 itself compels the conclusion that the circuit court erred in awarding wife attorney fees. He notes that the circuit court's basis for awarding wife attorney fees was its finding that husband violated Paragraph 16(G) of the PSA, triggering the remedy under Paragraph 29. Husband further notes that Paragraph 29 provides that "this [a]greement shall become null and void as to said non-disclosed asset(s)." Husband asserts that the wording does not identify specific provisions of the PSA that are "null and void" as to the non-disclosed asset; rather, by its plain language, it renders the entire PSA inapplicable. Thus, husband argues, if the PSA is null and void in regard to the profit-sharing plan, then there is no requirement under the PSA that wife be awarded her attorney fees.

Husband's argument ignores the actual ruling of the circuit court. We agree with husband that the plain language of the PSA provides that it "shall become null and void as to said non-disclosed asset(s)," therefore the provisions of the PSA do not apply *to* the profit-sharing plan. However, the circuit court's finding that husband was in violation of the PSA was in regard to husband's non-disclosure itself, not the profit-sharing plan. The court found that husband "violated [Paragraph] 16[(G)]" of the parties' PSA, which states that "except as specifically identified hereinabove, he or she has no other retirement accounts or benefits."

Thus, while the provisions of the PSA do not apply to the profit-sharing plan, they do apply to husband's non-disclosure of that particular asset. Accordingly, the attorney fee provision in the PSA applies to husband's non-disclosure and wife was entitled to receive attorney fees from enforcing that provision of the PSA.

## B. Wife's Appeal

### 1. Rate of Tax Deduction

Wife contends that the circuit court erred in ordering that husband deduct state and federal taxes at his rate, rather than at the tax rate of wife, from the profit-sharing payments he was ordered to pay to wife.

As noted above, "[w]here the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning." *Plunkett*, 271 Va. at 167.

In Paragraph 16(A), the PSA states that "[t]he parties will each be separately responsible for the payment of taxes on any retirement proceeds that he/she receives subsequent to the execution of this [a]greement." Wife argues that the circuit court's ruling that taxes should be deducted from the profit-sharing plan payments at husband's tax rate was inconsistent with the wording and the intent of Paragraph 16(A), because the "only fair reading of the agreement is that taxes should be paid by, and at the rate of, the party who, by the terms of the [a]greement, was the intended recipient," who is wife.

Again, as noted above, the parties' PSA contemplated that wife was to directly receive from Ernst & Young her share of the profit-sharing plan and would be responsible for the taxes on the funds she received from them. However, because the profit-sharing plan is non-assignable and not subject to division by Ernst & Young, husband receives the entire profit-sharing plan funds and must directly pay wife half of this gross sum. The PSA did not consider this scenario and therefore naturally is silent on which party's tax rate should be

applicable when husband directly receives all of the profit-sharing plan funds. The circuit court directed that husband deduct his tax rate from his payment to wife because he is now the party receiving the funds before distributing them to wife. Because the PSA did not contemplate that husband would receive all of the profit-sharing funds, and because husband now has tax liability on the entirety of the profit-sharing funds distributed directly to him, we conclude that the circuit court was not plainly wrong in ordering husband to deduct his tax rate from his payment to wife because he is the party directly receiving the funds. *See Sanford*, 19 Va. App. at 250 (noting that Code § 20-109 "does not prohibit a trial court from ordering a course of action upon a matter that the parties do not address in their property settlement agreement, provided the court is not otherwise precluded from doing so and the course of action is appropriate").

### 2. Circuit Court Attorney Fees

Wife contends that the circuit court erred in failing to award her attorney fees in the full amount she incurred to enforce the PSA and in awarding attorney fees to husband.

The circuit court found that wife "was entitled to an award of attorney's fees based on her having prevailed on her claim that [husband] has violated the terms of Paragraph 16[(G)]" of the PSA, but that she should not "be awarded fees associated with the [r]ule to [s]how [c]ause issued against [husband], which was withdrawn at the outset of the November 10, 2021, hearing." Thus, the court "ruled that, of total fees incurred of $18,898, the reasonable amount incurred by [wife] in the claim on which she prevailed, excluding the amount found by the court to be attributable to preparation and issuance of the [r]ule to [s]how [c]ause, was $9,687.00."

Paragraph 24 of the PSA provides that if a party "incurs any expenses in the successful enforcement of any of the provisions of this [a]greement . . . , the other party will be responsible for and will pay forthwith any and all reasonable expenses incurred, including but not limited to legal fees, court costs, investigator's fees, and travel." Here, the circuit court awarded wife

attorney fees in the amount of $9,687 for her successful enforcement of the petition for declaratory judgment, specific performance, and/or reformation. Under the circumstances of this case, we do not find the court's award of attorney fees unreasonable. Wife argues that she should be awarded her attorney fees in total, minus 1.5 hours on her attorney fee billing attributed to the preparation of the petition for rule to show cause and 4 hours of overestimated time for trial, for a total of $16,535.50 in attorney fees that she should have been awarded in full. Wife asserts that she should receive this entire amount because the court made no finding that her attorney fees were unreasonable and because there was no basis for such a finding. However, wife introduced an exhibit showing her attorney fees, which the circuit court had the opportunity to review. At the November 10, 2021 hearing, counsel for husband noted that wife's attorney fees were nearly four times greater than husband's attorney fees. The PSA allows a party successfully enforcing the provisions of the agreement to be awarded "reasonable" attorney fees and does not guarantee a complete recovery of all attorney fees submitted to the court. Based on this record, we conclude that the court did not err in granting wife $9,687 in attorney fees.

Wife also contends that the circuit court erred in awarding attorney fees to husband. The circuit court awarded attorney fees to husband based on his successful defense against the rule to show cause and held that of total fees incurred of $4,832.50, "the reasonable amount incurred by [husband] in successfully defending [wife's] [r]ule to [s]how [c]ause, and based upon his having prevailed on the issue of the tax rate to be applied to the payments the court ordered him to make to [wife], was $4,832.50."

Regarding the defense of a claim, Paragraph 24 of the PSA provides that "[i]f one party incurs any expenses in . . . the successful defense of any claims against this [a]greement, the other party will be responsible for and will pay forthwith any and all reasonable expenses

incurred, including but not limited to legal fees, court costs, investigator's fees, and travel." Wife argues that her declining to proceed on the rule to show cause did not constitute a "successful defense" of the rule by husband. We agree. At the hearing, husband did not have to defend against wife's claims in the show cause petition because she had withdrawn her petition at the outset of the hearing, thus leaving nothing related to this petition to defend. The circuit court did not rule on any of the claims in the rule to show cause. Because the rule to show cause was withdrawn, husband did not successfully defend the merits of the show cause. Accordingly, we reverse the portion of the circuit court's award of attorney fees to husband that was based upon wife's rule to show cause.[4]

### 3. Motion to Reopen the Record and for Sanctions

Wife first argues that the circuit court abused its discretion in denying her motion to reopen the record.

"Motions to reopen an evidentiary record or to reconsider a prior ruling involve matters wholly in the discretion of the trial court." *Thomas v. Commonwealth*, 62 Va. App. 104, 109 (2013); *see also Shooltz v. Shooltz*, 27 Va. App. 264, 269 (1998). A litigant's "right to relief on

---

[4] Wife further argues that the circuit court erred in awarding husband attorney fees "based upon his having prevailed on the issue of the tax rate to be applied to the payments the court ordered him to make to [wife]." Before the circuit court, wife argued that the court erred in awarding husband attorney fees in relation to the tax rate issue because husband prevailing on this issue was not a "successful defense" of a claim against the PSA. On appeal, wife makes a different argument, stating on brief that "there is theoretically authority for an award to [husband] for fees related to the tax-rate issue . . . in Paragraph 23," but then arguing that there is no evidence in husband's attorney fee billing statement of any time having been spent on the tax rate issue. Because wife presents a different argument in relation to husband's attorney fees awarded for the tax rate issue on appeal than she did before the circuit court, we do not address it. *See* Rule 5A:18; *Jessee v. Jessee*, 74 Va. App. 40, 51 n.8 (2021) ("Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." (quoting *Johnson v. Commonwealth*, 58 Va. App. 625, 637 (2011))).

Wife also contends that because husband was found in violation of the PSA, the clean hands doctrine barred the circuit court from awarding any attorney fees to him. However, wife failed to make this argument before the circuit court and thus has waived it for appellate review. *See* Rule 5A:18.

such rehearing depends upon his ability to point out some error on the face of the record, or to show some legal excuse for his failure to present his full defense at or before the time of entry of the decree which he seeks to have modified." *Thomas*, 62 Va. App. at 109 (quoting *Downing v. Huston, Darbee Co.*, 149 Va. 1, 9 (1927)).

In her motion, wife asked the court to reopen the record to receive expert testimony concerning the tax treatment of the profit-sharing plan payments husband had been ordered to make to her. Wife proffered that she had consulted a tax accountant who could outline a procedure for tax filing that would not necessitate the court deciding whether to use marginal or effective tax rates. Wife asked the court to reopen the evidence to receive the testimony of the tax accountant. The court found that "the effective tax rate is more appropriate" and "decline[d] to reopen the evidence for the purpose of trying to figure out a [tax] workaround."

On appeal, wife argues that this was an abuse of discretion because "the court . . . foreclosed an opportunity to resolve its stated concern about [husband] paying taxes on the money he would be paying to [wife]." However, wife was aware of the issue of which party's tax rate would be deducted from her share of the profit-sharing plan prior to the initial hearing in this case. Wife had knowledge of the PSA's provision that "[t]he parties will each be separately responsible for the payment of taxes on any retirement proceeds that he/she receives subsequent to the execution of this [a]greement" and that a court dividing the profit-sharing plan would have to deal with the tax consequences due to husband's receiving the full amount instead of her portion being distributed directly to her. Prior to the November 10, 2021 hearing, in her November 1, 2021 amended petition for declaratory judgment, specific performance, and/or reformation, wife asked the court to determine whether husband's or wife's tax rate should apply to the reduction of her share of the profit-sharing plan. Thus, wife had knowledge of this issue prior to the parties' initial hearing and had the opportunity to present relevant evidence to the

circuit court on exactly how taxes should have been deducted from her share of the profit-sharing payments. Accordingly, we conclude that the court did not abuse its discretion in denying wife's motion to reopen the evidence.

Wife further argues that the circuit court erred in denying her motion for sanctions against husband.

In her motion, wife argued that sanctions were appropriate against husband under Code § 8.01-271.1 because counsel for husband included in a proposed order for the court's signature a provision for wife to deduct taxes at husband's marginal tax rate, after the court had ruled at the December 3, 2021 hearing that his effective tax rate would be used. The court denied wife's motion for sanctions without further comment.

"[W]e review the circuit court's imposition of sanctions under Code § 8.01-271.1 pursuant to an abuse of discretion standard." *Winters v. Winters*, 73 Va. App. 581, 589 (2021) (quoting *Williams & Connolly, L.L.P. v. People for the Ethical Treatment of Animals, Inc.*, 273 Va. 498, 509 (2007)).

Wife argues that husband's actions violated Code § 8.01-271.1(C), which provides that

> [a]n oral motion made by an attorney . . . in any court of the Commonwealth constitutes a representation by him that . . . to the best of his knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

Wife asserts that the submission of the order containing the marginal rather than effective tax rate, contrary to the court's prior ruling, constituted a motion for the court to reverse its prior ruling. Wife argues that the knowing submission of an order that contains a term directly contrary to a ruling of the court is not "well grounded in fact."

Assuming without deciding that husband's proposed order constituted an oral motion under the statute, we hold that the circuit court did not abuse its discretion in denying wife's

motion for sanctions. Although the circuit court had previously ruled that husband's effective rather than marginal tax rate would be used, the court had not yet entered an order reflecting this ruling. Counsel for husband's argument for the use of a marginal tax rate did not violate the statute's requirements that oral motions be "well grounded in fact" and "warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." Wife argues that husband's proposed order was in fact a motion for reconsideration, but not in the form of a motion to reconsider, which was sanctionable. Nothing in the statute makes husband's conduct here—submitting a proposed order reflecting his preferred outcome after the court had initially ruled to the contrary—sanctionable under Code § 8.01-271.1(C). Therefore, we conclude that the circuit court did not abuse its discretion in denying wife's motion for sanctions.

Appellate Attorney Fees

On appeal, both parties ask for an award of appellate attorney fees. As noted above, if a property settlement agreement contains a provision governing attorney fees, the terms of the contract control. *See Jones*, 68 Va. App. at 106; *see also* Rule 5A:30(b)(2) (requiring a court to review the "terms of a contract or stipulation" between the parties to determine whether to award fees). These appeals, like the proceeding below, are part of an enforcement action with respect to the PSA. Accordingly, we remand to the circuit court to determine what appellate attorney fees and costs each party is entitled to pursuant to the PSA.

III. CONCLUSION

In husband's appeal,[5] for the reasons stated above, we hold the circuit court did not err in finding that husband did not disclose the profit-sharing plan to wife prior to execution of the parties' PSA and in finding that wife is entitled to a share of the profit-sharing plan. We further hold that the circuit court did not err in granting wife attorney fees. Finally, the court did not err

---

[5] Record No. 0315-22-4.

- 26 -

in deducting from husband's share of the profit-sharing plan taxes calculated based upon his effective tax rate rather than his marginal tax rate and did not err in failing to make the tax deduction from wife's share of the profit-sharing plan retroactive to the date of the PSA or the date of divorce.

In wife's appeal,[6] we hold that the circuit court did not err in ordering that husband deduct taxes at his tax rate. We also hold that the court did not err in failing to award attorney fees to wife in the full amount incurred in enforcing the provisions of the PSA. Further, the court did not abuse its discretion in denying wife's motion to reopen the record and for sanctions. We reverse the award of attorney fees awarded to husband to the extent it includes fees incurred in defending wife's petition for rule to show cause.

Accordingly, we remand the case for a recalculation of the amount of husband's circuit court attorney fees and for the determination of appellate attorney fees.

*Affirmed in part, reversed in part, and remanded.*

---

[6] Record No. 0314-22-4.